## Richmond.

### FIRST NATIONAL BANK OF SALEM, N. C., AND ALS. v. ANDERSON AND ALS.

#### February 3.

A railroad company conveys to trustees all of its property real and personal, including road-bed, rails, &c., in trust to secure the bonds, principal and interest, mentioned therein. Old iron rails taken up from the road as unfit for further use, is covered by the deed, and the trustees are entitled to have the same applied to pay interest due upon the bonds in preference to subsequent execution creditors of the company.

On the 26th of April, 1876, Joseph R. Anderson, receiver of the chancery court of the city of Richmond, in the case of A. Y. Stokes & Co. against the Tredegar Company, purchased of the Petersburg Railroad Company a quantity of the old iron rails which had been taken up from the track of said road, the said rails then being stored at Petersburg, and were to be delivered at that city on the cars for Richmond. Previous to that purchase the First National Bank at Salem, North Carolina, had recovered a judgment against said railroad company in the circuit court of the United States for the eastern district of Virginia for $275, with interest and costs, and on the 19th of April, 1876, sued out an execution thereon, which was in the hands of the United States marshal when the purchase was made by Anderson.

On the 24th of May, 1876, the Merchants National Bank of Virginia sued out an execution on a judgment it had recovered against the Petersburg Railroad Company, which was levied on the said railroad iron then on its passage from Petersburg to Richmond. And thereupon Anderson,

as receiver, applied to the chancery court of the city of Richmond for an order restraining the said parties and the sheriff from interfering with the delivery to him of the said iron. And the court made the order; and the said plaintiff, having sued out garnishee process to subject the price of said iron to the lien of said execution, the bank was authorized to prosecute the said suggestion, and the receiver was authorized to answer it. And the receiver was ordered to pay into bank, to the credit of the cause, the price of said iron, to await the result of the proceedings against said receiver under the garnishee process sued out by the said Merchants National Bank.

On the 30th of May, 1876, the court made another order directing the First National Bank of Salem, North Carolina, to cease any further interference with the said iron rails, and that they be delivered forthwith to the receiver. And it was further ordered, that the First National Bank of Salem and all other claimants of said rails, or of a lien thereon, have leave to litigate their claims aforesaid in the suggestion which has been issued against the receiver in the circuit court of the city of Richmond, or in such other mode as they may be advised to adopt, such claim, so far as it may be on the rails themselves, being transferred from the rails to the purchase money. And the court would dispose of the said purchase money according to the results of the litigation among the claimants.

In pursuance of the foregoing order a number of the execution creditors of the Petersburg Railroad Company filed their petitions, and among them were the First National Bank of Salem, N. C., Charles M. Atkins, and the National Bank of Virginia. And whilst the case was pending in the circuit court—viz: in April, 1877—J. Wilcox Brown and A. G. McIlwaine, trustees, filed their petition in the case. They represent that they are the trustees in a deed executed by the Petersburg Railroad Company, which had been duly

recorded in the proper counties, conveying therein all the property then owned or thereafter to be acquired by said company, to secure the payment of bonds to the amount of $500,000; and they file the deed with their petition. That by reference to the terms of the deed it will appear that the rents, profits, income and resources of the property of the company were all conveyed therein, to secure the bonds aforesaid and the interest thereon. That the iron sold to the Tredegar Company, the proceeds of which constitute the funds in dispute in these proceedings, was old iron taken up from its road bed and conveyed by the deed of trust aforesaid. That between three and four thousand dollars of interest on said bonds which became due on the 1st of January, 1877, has not been paid because the company has not the means for that purpose, although the holders of the coupons representing that interest are demanding payment. And they insist that the proceeds in dispute should be first applied to the payment of said interest, and ask that it may be so applied.

On the 14th of April, 1877, by consent of all the petitioners, the cases came on to be heard together, when the court held that the trustees Brown and McIlwaine were entitled to the fund deposited in the State Bank under the order of the chancery court, amounting to $1,830.66; and made an order authorizing their counsel to check on said bank for that sum. And thereupon the First National Bank of Salem, N. C., Charles M. Atkins, and others, creditors, excepted to the opinion and decisions of the court; and the said National Bank of Salem and assigns applied for and obtained an appeal to this court.

The bill of exceptions set out the deed under which Brown and McIlwaine claimed. This deed was dated the 1st of January, 1869, and was executed by the Petersburg Railroad Company, and reciting that it was executed to secure the payment of 400 bonds each of $1,000, and 200

bonds each of $500, stating the numbers and when payable, all bearing interest at the rate of eight *per cent. per annum*, payable semi-annually. The Petersburg Railroad Company conveyed to said Brown and McIlwaine all of the property of the said company then existing or thereafter acquired, and also the net income, tolls and receipts of said company included herein—specifying all of its real estate—and including also the road beds, sills, rails, chairs, frogs and switches, bridges and other fixtures appertaining to said road, and including also all their rolling stock, locomotive engines, &c., and all their machinery, tools, &c., and supplies of every kind, and books of accounts, &c. ; in short, everything belonging or hereafter to belong to said company, in trust, that until the company shall make default in the payment of some one of the coupons or bonds aforesaid, the company was to hold, use and enjoy all the said property, and to take to its own use all the income, earnings and profits thereof, and manage and control the same as if this deed was not made. But if the company failed to pay any one or more of the coupons aforesaid, or of the said bonds, then and thenceforth all of the property, &c., hereby conveyed should be held by said Brown and McIlwaine as mortgagees in trust to secure the payment of all the bonds and coupons aforesaid and to indemnify and save harmless the holders thereof ; and the holder or holders of any such unpaid coupons or bonds shall have full power and authority, either in their own name or the names of A. G. McIlwaine and J. Wilcox Brown, or the survivor of them, as mortgagees, to take all such steps and proceedings as may be necessary or proper to subject the property hereby conveyed, by sale or lease thereof, or otherwise, to the payment of the bonds and coupons hereby secured, or any one or more of them.

It was admitted that the facts stated in the petition of McIlwaine and Brown were true, and it was proved that the

old iron, the subject of controversy in these causes, was a part of a lot of old iron rails which had been taken up from the road-bed, and at the time of the sale to the Tredegar Company this iron was stored, most of it, at the shops of the said Petersburg Railroad Company, and a small part of it along the line of the said railroad, within the State of Virginia. And that this iron, so sold, was regarded as unfit for further use on the road, all of the bars originally taken up from the road-bed and replaced with new iron having been used along the road for replacing worn-out iron. And that it had not been the habit of the company, previous to the institution of these proceedings, to keep any separate account of the proceeds of sale of old iron, but the same went into the general fund of the company; but that subsequent to the institution of these proceedings, in the case of another sale made to the Tredegar Company, by instructions from the president of said railroad company, the check representing the proceeds of said sale was transferred directly to parties from whom new iron had been purchased.

*De Sausure* and *Walker & Hundley,* for the appellants.

There was no counsel for the appellees.

BURKS, J., delivered the opinion of the court.

This is a controversy among creditors of the Petersburg Railroad Company—judgment creditors on the one side and creditors secured by deed of trust on the other, the latter represented by the trustees. In proceedings of garnishment instituted by the former to enforce liens created, as alleged, by execution, the trustees interpleaded, claiming prior right and title under the deed of trust to the property or funds in dispute, and had judgment in their favor.

It is certified by the court in the bill of exceptions taken by the plaintiffs in error, as agreed by the parties, that the facts stated in the petition of the trustees are true.   That petition states that the iron sold, the proceeds of which constitute the funds in dispute, was old iron taken up from the road-bed by the railroad company, and was covered by the deed of trust.   This admission would seem to be conclusive against the claim of the execution creditors.   The rails, which were severed from the soil to which they were attached, and, as shown by the proofs, were unfit for further use on the road, may by the severance have been converted from real into personal property, but they nevertheless remained subject to the lien created by the deed of trust; for the deed conveyed all the property, real and personal, including in express terms "rails," "material," &c., owned by the company at the date of the deed, or which should be thereafter acquired, as well as the net income, tolls and receipts of the company.   This lien was never waived, discharged, or in any way or to any extent impaired.   The company had no right to dispose of the rails to the prejudice of the mortgagees or secured creditors, nor to divert the property from the purposes of the trust, and it does not appear that there was anything done or omitted to be done by them upon which an estoppel in favor of the execution creditors could be founded.   Indeed, after the sale had been made and the proceeds to which the several alleged liens were transferred from the property under an order of the chancery court had been deposited under the same order to abide the judgment of the circuit court in the proceedings of garnishment, the trustees interposed and asserted their claim to priority under the deed, alleging (among other things), what is admitted to be true, that between three and four thousand dollars of interest which became due on the first day of January, 1877 (after the commencement of the proceedings), and which was secured

by the deed, had not been paid because the company had not the means, although the holders of the coupons representing that interest were demanding payment. It is not necessary to decide what would have been the rights of the execution creditors in respect to the proceeds of sale, if such proceeds had been paid over without objection and had gone into the general fund of the company, without any separate account thereof being kept. No such question arises in the present case, as the proceeds were claimed by the trustees before payment was made.

The liens of execution creditors as against mortgage creditors were sustained by this court in *Gibert* v. *Washington City, Virginia Midland and Great Southern Railroad Company,* decided during the present term, but they were liens in respect of the subject against which they were operated and enforced, not on specific property, as in the present case, covered by the mortgages, but on the income, tolls and earnings which had been received by the railroad company before the mortgaged property had been taken possession of by the receiver under proceedings for foreclosure. It was considered that, under the mortgages, such earnings, before possession taken of the property either by the mortgagees or receiver of the court, were under the control and at the disposal of the mortgagor company, and therefore liable to the executions of unsecured creditors. The principles and authorities upon which that decision was based may be seen by reference to the opinion of the court delivered by Judge Christian, 33 Gratt. 587.

In the case now before us the creditors, by placing their writs of *fieri facias* in the hands of an officer to be executed, acquired liens paramount to the lien created by deed of trust on the earnings, if any there were, then in the possession of the company, which earnings they might have subjected to the payment of their judgments. They also thereby acquired liens on the other property conveyed by

First National Bank of Salem, N. C., and als. v. Anderson and als.

the deed, but such liens were subordinated to the deed of trust—that is, they were liens on the equity of redemption only, which could not be taken in execution at law.   Green, J., in *Coutts* v. *Walker*, 2 Leigh, 268, 280.

The views which have been presented show that, in our opinion, there is no error in the judgment of the circuit court, and it must be affirmed.

JUDGMENT AFFIRMED.